# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BARNETT, | 1:12-cv-00130-LJO-SAB |
| Plaintiff, | **ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S COUNTERMOTION FOR SUMMARY JUDGMENT (Docs. 14, 24)** |
| v. | |
| SOUTHERN CALIFORNIA EDISON COMPANY LONG TERM DISABILITY PLAN, | |
| Defendant. | |

**PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Diane Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if

1

Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from outside the Eastern District of California.

## I. INTRODUCTION

Plaintiff William Barnett ("Mr. Barnett") brings this action under the Employee Retirement Income Security Act ("ERISA"), against defendant Southern California Edison Company Long Term Disability Plan ("Plan"). Mr. Barnett seeks to enjoin the Plan from relying on its contractual limitations period. He also seeks reinstatement of his long term disability benefits and to enjoin the Plan from utilizing unfair claims processes and appeals procedures. Now before the Court is Mr. Barnett's motion for summary judgment. Also, before the Court is the Plan's countermotion for summary judgment/summary adjudication. For the reasons discussed below, this Court GRANTS in part and DENIES in part Mr. Barnett's motion for summary adjudication and GRANTS in part and DENIES in part the Plan's countermotion for summary adjudication.

## II. BACKGROUND

**A. Facts**

**1. The Plan**

Mr. Barnett was employed by Southern California Edison ("Edison") as a Program Manager/Project Manager. (Doc. 23-6, p. 4 ¶ 3). As an Edison employee, he was eligible to participate in Southern California Edison's Long Term Disability Plan. (*Id.*). The Plan is administered by Edison's Benefits Committee ("Benefits Committee"). (Doc. 30, p. 2 ¶ 5). The claims are administered by Sedgwick Claims Management Services, Inc. ("Sedgwick"). (Doc. 23-6, p. 4 ¶ 2). The day to day contract administration is managed by Deborah Jacobs ("Ms. Jacobs"), Edison's Human Resources Manager.[1] (Doc. 30, p. 4 ¶ 15).

Under the Plan an individual is "disabled" if he or she is unable to perform his or her regular and customary job for the first two years of his or her disability and any reasonable job for the

---

[1] In Mr. Barnett's reply brief, he states that this is "factually untrue" (Doc. 29, p. 6:26) but fails to provide support for this assertion.

company after two years. (Doc. 23-6, p. 2 ¶ 1A). "A reasonable job is any gainful activity in any job classification for which [the individual is] or may reasonably become fitted by education, training, or experience." (*Id*. at ¶ 1B).

The Plan further provides that if a benefit claim is denied in whole or in part, the Plan participant may appeal the decision. (Doc. 23-6, p. 3 ¶ 1F). Appeals are processed as follows: (1) Sedgwick determines the participants continued eligibility for benefits based on the medical documentation available. (Doc. 23-6, p. 3 ¶ 1F). (2) If the plan participant disagrees with Sedgwick's decision, the claim is reviewed by three physicians. (*Id*.). If two of the three physicians agree that the Plan participant is disabled, then long term disability benefits are approved. (*Id*.).

The Plan contains a contractual limitations period which requires the participant to file a legal action no more than 180 days after a final decision is rendered on his or her appeal. (Doc. 26-3, p. 71).

**2. Mr. Barnett's Benefits Request**

Mr. Barnett had lower back problems which led to surgery in 1999. (Doc. 30, p. 2 ¶ 1). In June 2000, he left work and applied for disability benefits with the Plan. (Doc. 30, p. 2 ¶ 2). The Plan certified Mr. Barnett as disabled and approved his request for benefits effective December 20, 2000. (Doc. 23-6, p. 4 ¶ 4; Doc. 30, p. 2 ¶ 3). The Plan further informed Mr. Barnett that he needed to apply for Social Security disability benefits and that any benefits he received from the Social Security Administration would be deducted from the benefits paid by the Plan. (Doc. 23-6, p. 4 ¶ 4).

The Social Security Administration found Mr. Barnett disabled and awarded him benefits effective August 2000. (Doc. 23-6, p. 15 ¶ 34). As a result of this award, the Plan reduced the benefits it paid to Mr. Barnett by the amount he received from Social Security. (Doc. 23-6, p. 15 ¶ 35). On June 19, 2009, the Social Security Administration found that Mr. Barnett suffered from a continuing disability. (Doc. 23-6, p. 16 ¶ 38).

**3. Termination of Mr. Barnett's Benefits**

In July 2009, the Plan exercised its right to certify that Mr. Barnett continued to be eligible for benefits by having an independent medical examination performed by an orthopedic surgeon. (Doc. 30, p. 5 ¶ 17). The surgeon determined that Mr. Barnett's back surgery was successful with limited residual effect, made various findings regarding Mr. Barnett's physical abilities, and deferred the

question of whether Mr. Barnett could perform work in accordance with the Plan to a vocational rehabilitation expert. (Doc. 30, p. 6, ¶ 19-25). In a transferable skills analysis, a vocational rehabilitation expert concluded that Mr. Barnett could perform four positions with Edison. (Doc. 30, p. 7 ¶ 27).

On August 26, 2009, the Plan terminated Mr. Barnett's benefits based on its determination that he no longer satisfied the Plan's definition of disability. (Doc. 30, p. 7 ¶ 28). The Plan determined that based on the surgeon's independent medical examination and the transferable skills analysis, Mr. Barnett was no longer precluded from performing any reasonable job at Edison. (*Id*.). The Plan informed Mr. Barnett of his right to appeal its decision. (Doc. 23-6, p. 5 ¶ 5).

**4. Mr. Barnett's Appeal**

On September 25, 2009 and October 13, 2009, Mr. Barnett, through counsel, requested reconsideration of the termination of his benefits. (Doc. 23-6, p. 5 ¶ 6). On April 7, 2010, the Plan, through Sedgwick, denied Mr. Barnett's appeal. (Doc. 23-6, p. 5 ¶ 7). As part of the appeal process, six doctors[2] reviewed Mr. Barnett's case and an updated list of restrictions was created. (Doc. 18-20, p. 3). Based on the updated restrictions, another transferable skills analysis was performed and it was determined that Mr. Barnett was capable of performing two positions at Edison. (Doc. 18-20, p. 3-4). Accordingly, Sedgwick concluded that because Mr. Barnett was no longer precluded from performing any "reasonable job" with Edison, he no longer satisfied the Plan's definition of disability and upheld the termination of his benefits. (Doc. 18-20, p. 5).

**B. Procedural History**

On January 27, 2012, Mr. Barnett filed a complaint with this Court. (Doc. 1). He alleges three causes of action. (*Id*.). First, he seeks a declaratory judgment which bars the Plan from relying on its 180 day contractual limitations period. (*Id*. at 8). Second, he seeks a declaratory judgment which requires the Plan to reinstate and pay his long term disability benefits. (*Id*. at 9). Finally, he seeks a permanent injunction which prohibits the Plan from utilizing its allegedly unfair claims and appeals processes and which requires the Plan to adopt full and fair claims and appeals practices. (*Id*. at 15).

---

[2] If multiple disciplines are implicated in a disability, as in Mr. Barnett's case, multiple panels of physicians can be used during the appeals process. (Doc. 24-2, p. 7:5-12).

On March 29, 2013, Mr. Barnett filed the instant motion for summary judgment. (Doc. 14, 16). He seeks summary adjudication of his first two causes of action. (Doc. 16, p. 6). He contends that he is entitled to summary adjudication on his first cause of action because the Plan violated its fiduciary duty by failing to disclose the contractual limitations period. With regard to his second cause of action, he maintains that under the plain language of the Plan his benefits cannot be terminated until Edison offers him an existing job. In the alternative, he argues that the Plan is judicially estopped from terminating his benefits based on his application and receipt of Social Security benefits. Mr. Barnett maintains that if his motion is granted, he will dismiss his third cause of action as moot.

On April 29, 2013, the Plan filed an opposition to Mr. Barnett's motion for summary judgment (Doc. 23) as well as a countermotion for summary judgment/summary adjudication (Doc. 24). In the Plan's opposition and countermotion, it argues that Mr. Barnett's claims are time barred by the 180 day contractual limitations period. (Doc. 23, p. 21; Doc. 24-1, p. 20). In the alternative, it argues that it is entitled to summary adjudication on Mr. Barnett's second and third causes of action because Mr. Barnett's benefits were properly terminated in accordance with the terms of the Plan. Specifically, it argues that the plain language of the Plan does not require Edison to offer a plan participant a job before the Plan may terminate his or her benefits. The Plan further argues that Mr. Barnett's application and receipt of Social Security benefits does not judicially estop it from terminating Mr. Barnett's benefits. The Plan also argues that Mr. Barnett should be judicially estopped from claiming that he is disabled because he testified to the contrary at his deposition in another matter.

Mr. Barnett contends that the Plan's countermotion should be denied as untimely because the filing deadline for dispositive motions was March 29, 2013, and the Plan did not file its countermotion until April 29, 2013. (Doc. 12, p. 2). The Plan's countermotion is not untimely. Local Rule 230(e) provides that "[a]ny counter-motion . . . that is related to the general subject matter of the original motion shall be served and filed . . . on the date prescribed for the filing of [an] opposition." Here, the Plan's countermotion is related to the general subject matter of Mr. Barnett's motion for summary judgment. In addition, the opposition was due on April 29, 2013,[3] which is the same day the Plan filed

---

[3] Local Rule 230(c) provides that an opposition is due fourteen (14) days prior to the hearing date. Here, Plaintiff set the hearing date for his motion for summary judgment on May 13, 2013. (Doc. 14). Fourteen days before the hearing date is

5

its countermotion. Thus, the Plan's countermotion is not untimely and the Court will consider the arguments set forth within.

The Court found the parties' motions suitable for a decision without oral argument, pursuant to Local Rule 230(g), and vacated the May 13, 2013, hearing date. (Doc. 32).

### III. LEGAL STANDARD

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable trier of fact could return a verdict in favor of the nonmoving party. *Id*.

A party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id*. (citing *Celotex*, 477 U.S. at 323).

If the movant has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis in original). The nonmoving party must go beyond the allegations set forth in its pleadings. *See* FED. R. CIV. P. 56(c). "[B]ald assertions or a mere scintilla of evidence" will not suffice. *Stefanchik*, 559 F.3d at 929. Indeed, the mere presence of "some metaphysical doubt as to the material facts" is insufficient to withstand a motion for summary

April 29, 2013.

judgment. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id*. at 587 (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Rather, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must provide a factual predicate from which the inference may justifiably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

## IV. DISCUSSION

**A. Mr. Barnett's First Cause of Action**

In Mr. Barnett's first cause of action, he seeks to enjoin the Plan from relying on its 180 day contractual limitations period.

"There are two parts to the determination of whether a claimant's ERISA action is timely filed: [a court] must determine first whether the action is barred by the applicable statute of limitations, and second whether the action is contractually barred by the limitations provision in the policy." *Withrow v. Halsey*, 655 F.3d 1032, 1035 (9th Cir. 2011).

**1. ERISA Statute of Limitations**

ERISA does not provide its own statute of limitations. *Id*. at 1036. Thus, under Ninth Circuit precedent, district courts apply the state statute of limitations that is most analogous to an ERISA benefits-recovery program. *Id*. Here, California's four year statute of limitations for contract disputes applies. *Id*. Under the four year statute of limitations period, Mr. Barnett's complaint was timely. The Plan denied Mr. Barnett's appeal on April 7, 2010, and Mr. Barnett filed his complaint on January 27, 2012.

**2. Contractual Limitations Period**

The next and more relevant inquiry to the issue in this case, is whether Mr. Barnett's claims are contractually barred by the limitations provision in the policy. The contractual limitations period in the policy provides:

7

> If your appeal is denied, in whole or in part, you may bring a civil action in federal court. However, no action may be brought . . . until you have exhausted the claim and appeal procedures in this Handbook. Further, no legal action may be brought . . . more than 180 days after the final decision has been rendered . . . on the appeal of your claims for benefits under the terms of the respective plans.

(Doc. 26-3, p. 71). It is undisputed that Mr. Barnett filed his claim after the expiration of the contractual limitations period. However, Mr. Barnett seeks to enjoin the Plan from relying on the contractual limitations period based on his argument that the Plan's failure to disclose the limitations period violated its fiduciary duty. In the Plan's countermotion, it contends that Mr. Barnett's claims are time barred.

An ERISA fiduciary is obligated to "discharge his [or her] duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The ERISA fiduciary duty "includes the common law duty of loyalty, which requires fiduciaries to deal fairly and honestly with beneficiaries." *Farr v. U.S. West Commc'n, Inc.*, 151 F.3d 908, 915 (9th Cir. 1998). "[F]iduciaries breach their duties if they mislead plan participants or misrepresent the terms or administration of a plan." *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) (per curiam); *see also Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996) ("lying is inconsistent with the duty of loyalty owed by all fiduciaries . . .") (internal quotation marks omitted).

The Plan denied Mr. Barnett's appeal on April 7, 2010. (Doc. 23-6, p. 5 ¶7). On April 21, 2010, Mr. Barnett's counsel requested "all documents, records and other information relevant to" Mr. Barnett's claim for benefits including "[t]he plan, with all amendments [and] the Summary Plan Description and all amendments . . ." (Doc. 18-21).

Ms. Jacobs responded to counsel's request. In a letter dated May 6, 2010, she stated:

> In response to your letter dated April 21, 2010, enclosed you will find copies of *Your Benefits Handbook* for the LTD[4] Plan, accompanying plan change notices, and the applicable LTD trust documents.
>
> There are no . . . separate plan documents in relation to the LTD plan.

(Doc. 18-29). The document Ms. Jacobs referred to as the *Your Benefits Handbook* was a 13 page

---
[4] LTD stands for "long term disability."

8

1 summary of the Long Term Disability Plan which was actually an excerpt from a much larger
2 document entitled the *Your Benefits Handbook*. The 13 page summary did not include the Plan's 180
3 day contractual limitations period clause. The larger document that was not provided to counsel
4 contained the limitations period. The Plan breached its fiduciary duty by misrepresenting the terms of
5 the Long Term Disability Plan. Ms. Jacobs provided Mr. Barnett's counsel with a summary of the
6 Plan and represented that it was a complete copy when in fact it was not. Accordingly, the Plan
7 breached its fiduciary duty to deal fairly and honestly with its beneficiaries. *See Farr*, 151 F.3d at 915.

8   In the Plan's opposition and countermotion it argues that it did not breach its fiduciary duty
9 because the summary provided references the larger *Your Benefits Handbook* document. Thus,
10 counsel was on notice that there was a larger Plan document. This contention is unpersuasive. The
11 final paragraph of the summary provided states:

> This handbook contains a number of additional sections which, together with this summary, provide all the provisions of the Long Term Disability Plan. Refer to the Eligibility, **Other Important Information** and **Glossary** sections of this handbook for more information about the way the plans are administered, your rights as a participant, and for definitions of terms that appear in italics.

17 (Doc. 18-29, p. 18). Although the final paragraph of the summary refers to the document as a
18 summary, this Court finds that this language does not overcome Ms. Jacob's representation that the
19 summary was a complete copy of the Plan.

20   The Plan further argues that Mr. Barnett had access to the complete Plan document because a
21 complete copy of the *Your Benefits Handbook* was available online to all Edison employees. The
22 Court finds that although Mr. Barnett may have had access to the complete Plan document online, this
23 does not trump Ms. Jacob's representation that the summary was a complete copy of the Plan.
24 Moreover, Ms. Jacob's did not direct counsel to the online document. The Plan further points out that
25 summaries of the Plan were distributed to all participants in CD ROM form in 2007. The fact that
26 summaries were distributed to all participants in 2007 is irrelevant because, as discussed above, the
27 Plan summary does not contain the contractual limitations period.

28   Finally, the Plan's argument that this Court should stay this matter pending the Supreme

Court's decision in *Heimeshoff v. Hartford and Accident Life Ins. Co.*, 2013 WL 1500233 (Apr. 15, 2013), is unavailing. The resolution of the issue presented in *Heimeshoff* does not affect the outcome of this case. In *Heimeshoff*, the Supreme Court granted certiorari on the issue of when a statute of limitations should accrue for judicial review of an ERISA disability adverse benefit determination. Here, the issue is whether Edison breached its fiduciary duty by providing an incomplete copy of the Plan, which did not include the contractual limitations period, while representing that the document was a complete copy of the Plan. Hence, the Supreme Court's resolution of the issue in which it granted certiorari does not affect the issue presented in this case.

The Plan breached its fiduciary duty by providing counsel with an incomplete copy of the Plan. As a result, this Court GRANTS Mr. Barnett's motion for summary adjudication on his first cause of action. The Plan is enjoined from relying on the 180 day contractual limitations period. For the reasons set forth above, the Plan's countermotion for summary adjudication on this issue is DENIED.

**B. Mr. Barnett's Second Cause of Action**

In Mr. Barnett's second cause of action, he seeks reinstatement and payment of his long term disability benefits. He alleges that he is totally disabled under the terms of the Plan and therefore, entitled to benefits. He also alleges that the Plan denied him a full and fair review of his claim. In Mr. Barnett's motion for summary judgment, he seeks summary adjudication regarding issues related to his allegation that he is totally disabled only.

**1. Standard of Review**

As a preliminary matter, the parties disagree as to the applicable standard of review. Mr. Barnett contends that the Court should review his benefits claim de novo because his claim was denied by an unauthorized party. The Plan argues that the abuse of discretion standard applies.

A denial of benefits is to be reviewed under a de novo standard unless "the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan." *Firestone Tire and Rubber Co. v. Brunch*, 489 U.S. 101, 115 (1989). If the Plan confers discretionary authority as a matter of contractual agreement, then the standard of review shifts to abuse of discretion. *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc). "[F]or a plan to alter the standard of review from the default of de novo to the more lenient

abuse of discretion, the plan must unambiguously provide discretion to the administrator." *Id*. "When an unauthorized body that does not have fiduciary discretion to determine benefits eligibility renders such a decision . . . deferential review is not warranted." *Jebian v. Hewlett-Packard Co. Employee Org. Income Prot.*, 349 F.3d 1098, 1105 (9th Cir. 2003) (quoting *Sanford v. Harvard Indus.*, 262 F.3d 590, 597 (6th Cir. 2001)) (internal quotation marks omitted). Where a seemingly unauthorized body renders a decision regarding benefits eligibility, courts look to whether "the Disability Plan contemplated the possibility of a transfer of discretionary authority to a third-party and whether there was evidence establishing delegation to the" third party. *Shane v. Albertson's Inc.*, 504 F.3d 1166, 1171 (9th Cir. 2007).

Mr. Barnett alleges that Sedgwick and Ms. Jacobs, two unauthorized parties, made the decision to discontinue his benefits. Thus, he contends, the Court should review his claim de novo. It is undisputed that the Plan delegated discretionary authority to the "Benefits Committee" to interpret the Plan and decide appeals. (Doc. 23-6, p. 9 ¶ 20). It is further undisputed that the Benefits Committee could delegate its authority in carrying out the provisions of the plan.[5] (Doc. 30, p. 3-4 ¶ 11). Therefore, the issue is whether there is evidence to show that the Benefits Committee delegated its authority to Sedgwick and Ms. Jacobs.

With regard to Sedgwick, Ms. Jacobs' deposition testimony provides that Sedgwick is the body that decides appeals. (Doc. 18-25, p. 25; Doc. 24-2, p.8). Mr. Barnett argues that this testimony does not show that Sedgwick had authority to decide his April 2010 appeal because this testimony refers to a contract change which gave Sedgwick the authority to decide appeals but the change was not effective until December 2010. In support of Mr. Barnett's argument, he cites to a portion of Ms. Jacobs' testimony which provides that a change in the purchase order between Edison and Sedgwick occurred effective December 2010. (Doc. 18-25, p. 17-18). The problem with Mr. Barnett's argument is that it is not clear from the deposition excerpt as to what changed in the contract. (Doc. 18-25, p. 17-18). In addition, it is undisputed that on April 23, 2009, the appeals process was amended by resolution of the Benefits Committee to employ the use of medical panels to review certain appeals and

---

[5] It is undisputed that the Plan states that the Benefits Committee may "employ legal, actuarial, medical . . . and other assistance as they may deem appropriate in carrying out the provisions of the plans." (Doc. 30, p. 3-4 ¶ 11).

*provide medical opinions to Sedgwick.* (Doc. 30, p. 4 ¶13). The fact that it is undisputed that an amendment to the appeals process provides that medical opinions would be provided to Sedgwick shows that starting in at least 2009 Sedgwick had the authority to decide appeals. Accordingly, the record shows that the Benefits Committee delegated its authority to Sedgwick.

Mr. Barnett argues that even if Sedgwick had discretionary authority to decide the appeal, it was Ms. Jacobs, an Edison employee without discretionary authority, who actually decided the appeal. Mr. Barnett points to various portions of Ms. Jacobs' deposition testimony and argues that the testimony shows that Ms. Jacobs had the authority to override Sedgwick's decisions. The record does not support Mr. Barnett's characterization of Ms. Jacobs' testimony. The record shows that Ms. Jacobs did not have the authority to override Sedgwick's decisions and there is nothing to show that Ms. Jacobs decided Mr. Barnett's appeal.

For instance, Mr. Barnett points to the portion of Ms. Jacobs' testimony which provides that under Edison and Sedgwick's contract she could direct Sedgwick to do certain things. (Doc. 30, p. 5). It is true that the contract provides that the "vendor may receive . . . instruction or directions from Edison concerning performance of the work" and lists various examples of what direction may include. (Doc. 18-25, p. 8-9). It is also true that Ms. Jacobs confirmed that she could direct Sedgwick to do things in certain situations. (Doc. 18-25, p. 8-9). However, Ms. Jacobs does not specify what she could direct Sedgwick to do and more importantly this testimony does not show that Ms. Jacobs directed Sedgwick's decision regarding Mr. Barnett's appeal.

Mr. Barnett also argues that Ms. Jacobs' testimony provides that she could "instruct Sedgwick to redo an appeal decision or reconsider a decision." (Doc. 30, p. 5). Ms. Jacobs testified that she would send back an appellate decision if a mistake was made during the review process. (Doc. 18-25, p. 21). Ms. Jacobs was clear that she never directed Sedgwick to make a certain decision; her job was merely to point out a flaw or problem that needed to be addressed. (Doc. 18-25, p. 22). Therefore, this testimony does not show that Ms. Jacobs was a decision maker.

Mr. Barnett also points out that Ms. Jacobs testified that she had the authority to make recommendations regarding the wording in a decision letter. (Doc. 30, p. 5). Ms. Jacobs explained that she reviews a draft of Sedgwick's decision letter and has the authority to change the wording but

12

that the changes pertain to issues that exceed Sedgwick's scope, such as what will happen to the employee after the decision is rendered. (Doc. 18-25, p. 24). The fact that Ms. Jacobs can change the wording in a decision letter does not show that she has decision making authority or that she made a decision in this case.

In addition, Mr. Barnett points to Ms. Jacobs' testimony which provides that she met monthly with Sedgwick to review cases and ensure that she agreed with their course of action. (Doc. 30, p. 5). It is true that Ms. Jacobs met with Sedgwick monthly to review cases. (Doc. 18-25, p. 25). However, Ms. Jacobs explained that the purpose of the meetings was to ensure that Sedgwick complied with the Plan; she was not directing their decisions. (*Id.*).

Mr. Barnett also points to the testimony of Francine Potter ("Ms. Potter"), an Edison employee, which provides that Ms. Jacobs required Sedgwick to grant benefits. (Doc. 30, p. 5). At first, Ms. Potter testified that Ms. Jacobs could instruct Sedgwick to overturn the denial of benefits (Doc. 18-22, p. 5) but she later clarified that Ms. Jacobs does not have the authority to overturn an appeal. (Doc. 18-22, p. 38-39, 40-42). Rather, she has the authority to deny benefits before it gets to the final appeal phase. (*Id.*). Accordingly, Mr. Barnett has failed to show that Ms. Jacobs had the authority to override Sedgwick's decisions. In addition, Mr. Barnett has failed to show that Ms. Jacobs made the decision to uphold the termination of his benefits on appeal.

The record shows that the Plan delegated authority to decide appeals to the Benefits Committee, that the Benefits Committee delegated its authority to Sedgwick, and that Sedgwick decided Mr. Barnett's appeal. Because there was a valid delegation of authority the applicable standard of review is abuse of discretion. *See Abatie*, 458 F.3d at 963.

**2. Total Disability under the Terms of the Plan**

Mr. Barnett argues that regardless of the standard of review, he is entitled to benefits because the plain language of the Plan provides that in order to validly terminate his benefits Edison must offer him an existing job. In the Plan's countermotion, it contends that Edison was not required to offer Mr. Barnett a job in order to terminate his benefits.

"[T]erms in an ERISA plan should be interpreted in an ordinary and popular sense as would a person of average intelligence and experience." *Richardson v. Pension Plan of Bethlehem Steel Corp.*,

112 F.3d 982, 985 (9th Cir. 1997) (internal quotation marks omitted). When disputes arise "courts should first look to [the] explicit language of the agreement to determine, if possible, the clear intent of the parties." *Id*. (quoting *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1293 (6th Cir. 1991)). The intended meaning of even the most explicit language can only be understood in light of the context that gives rise to its inclusion. *Id*. If the plan is ambiguous, the court may examine extrinsic evidence to determine the intent of the parties. *Richardson*, 112 F.3d at 985. "An ambiguity exists when the terms or words of a . . . plan are subject to more than one reasonable interpretation." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000). "[O]nly by excluding all alternative readings as unreasonable may [a court] find that a plan's language is plain and unambiguous." *Id*.

Here, the letter from Sedgwick denying Mr. Barnett's appeal lays out the relevant terms of the Plan. (Doc. 18-20, p. 4). It provides:

> After two years of disability, you must be totally disabled in order to remain eligible for benefits.
>
> **What "Totally Disabled" Means**
> Totally disabled means you are unable to perform any reasonable job for the *company* due to illness or injury . . .
>
> You will also be eligible for LTD benefits if you had been denied LTD benefits and subsequently become eligible for Social Security disability benefits. However, if the company offers you a reasonable job or the company's Return to Work Program (RTWP) while you are receiving LTD benefits, you must accept the job or the RTWP or your LTD benefits will end and your employment will be terminated.
>
> **What "Reasonable Job" Means**
> A reasonable job is any gainful activity or any job classification for which you are or may reasonably become fitted by education, training, or experience. However, the meaning of "reasonable job" varies among employee groups, depending on where the job is located.
>
> For employees of Southern California Edison, a reasonable job is located at any company within the zone (Northwestern, Basin, or Eastern) in which you were working on your last day at work.

During the administrative appeal, Sedgwick determined that based upon Mr. Barnett's work capacity, job skills, and educational background that he could perform the following occupations with Edison: (1) Customer Specialist I and (2) Telephone Operator. (Doc. 18-20, p. 3-4). Thus, Sedgwick

reasoned, Mr. Barnett no longer met the definition of "totally disabled" under the Plan because he was no longer precluded from performing any "reasonable job" within Edison. Based on this determination, Sedgwick upheld the discontinuance of Mr. Barnett's benefits.

Mr. Barnett argues that under the plain language of the Plan, in order to terminate his benefits Edison must actually offer him an existing job. In support of this argument, Mr. Barnett points to the portion of the Plan which provides that "if the Company offers you a reasonable job . . . while you are receiving LTD benefits, you must accept the job or participate in the return-to-work program or your LTD benefits will end and your employment will be terminated." (Doc. 16, p. 20:1-3). This particular term is relevant if the company offers the Long Term Disability beneficiary a job. This term does not state that an individual will remain eligible for benefits until Edison provides a job.

Moreover, when this term is viewed in conjunction with the Plan's definition of "totally disabled" it is clear that the term "totally disabled" is tied to the inability to perform any reasonable job due to illness or injury and not because of the absence of an available position.[6] *See Mossoian v. Daimlerchrysler Corp.*, 2006 WL 3206074, * (E.D. Mich. Nov. 3, 2006) (rejecting plaintiff's argument that because there were no jobs available that he could perform within the restrictions imposed by his treating physicians that he was disabled under the Plan), *aff'd*, 259 Fed. Appx. 743 (6th Cir. 2008) (per curiam). Accordingly, this Court finds that under the plain language of the Plan Edison is not required to offer a beneficiary an existing job before terminating his or her benefits. This Court further finds that Mr. Barnett's interpretation of the Plan is unreasonable. *See McDaniel*, 203 F.3d at 1110 ("only by excluding all alternative readings as unreasonable may [a court] find that a plan's language is plain and unambiguous").

Therefore, this Court DENIES Mr. Barnett's motion for summary adjudication with regard to this issue and GRANTS the Plan's countermotion for summary adjudication.

**3. Mr. Barnett's Judicial Estoppel Argument**

Mr. Barnett contends that the Plan is judicially estopped from arguing that he is not totally disabled because he was acting as the Plan's trustee when pursuing Social Security benefits. Thus, Mr.

---

[6] The Plan states: "Totally disabled means you are unable to perform any reasonable job for the *company* due to illness or injury . . ." (Doc. 18-20, p. 4).

1  Barnett's position during the Social Security proceeding, that he could not perform any job for which
2  he was qualified, was also the Plan's position.  In the Plan's countermotion, it contends that judicial
3  estoppel does not apply.

4        Judicial estoppel precludes a party from asserting one position in a judicial proceeding and then
5  later seeking an advantage by taking a clearly inconsistent position in a later proceeding.  *Hamilton v.*
6  *State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001).  "A party can be estopped by
7  statements successfully advanced in both judicial and administrative proceedings."  *Milton H. Greene*
8  *Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 n.13 (9th Cir. 2012).  "It is an equitable
9  doctrine invoked not only to prevent a party from gaining an advantage by taking inconsistent
10 positions, but also because of general considerations of the orderly administration of justice and regard
11 for the dignity of judicial proceedings and to protect against a litigant playing fast and loose with the
12 courts."  *Id.* at 993 (internal quotation marks omitted).

13       In deciding whether to apply the doctrine, courts typically consider the following factors: First,
14 whether a party's later position is clearly inconsistent with its earlier position.  *New Hampshire v.*
15 *Maine*, 532 U.S. 742, 750 (2001).  Second, whether the court in the earlier lawsuit accepted the party's
16 position, so that judicial acceptance of an inconsistent position in the present proceeding would create
17 the perception that one of the courts was misled.  *Id.*  Third, "whether the party seeking to assert an
18 inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing
19 party if not estopped."  *Id.* at 751.

20       It is undisputed that the Plan instructed Mr. Barnett to apply for Social Security disability
21 income, that Mr. Barnett agreed to apply for benefits, and that Mr. Barnett understood that the benefits
22 paid by the Plan would be reduced by the amount he received from Social Security.  (Doc. 23-6, p. 14
23 ¶ 32, 33).  It is further undisputed that the Social Security Administration found Mr. Barnett disabled,
24 awarded him benefits, and that the benefits paid by the Plan were reduced by the amount he received
25 from Social Security.  (Doc. 23-6, p. 15 ¶ 34, 35, 37).  It is also undisputed that in June 2009, the
26 Social Security Administration found that Mr. Barnett suffered from a continuing disability.  (Doc. 23-
27 6, p. 16 ¶ 38).

28       Mr. Barnett now argues that the Plan is judicially estopped from arguing that he is not totally

disabled because the Plan gained a significant economic benefit by requiring Mr. Barnett to argue that he was incapable of working in order to obtain Social Security benefits. Thus, Mr. Barnett maintains, he was acting as the Plan's trustee when pursuing Social Security benefits. As a result, his position during the Social Security proceeding, that he could not perform any job for which he was qualified, was the Plan's position as well.

The Seventh Circuit was presented with a similar argument and determined that the doctrine of judicial estoppel technically did not apply because the defendants in the judicial proceeding were not parties to the proceeding before the Social Security Administration. *Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998). The Seventh Circuit observed that defendants "prevailed" in a practical sense because the grant of Social Security benefits reduced the amount of plaintiff's claim against defendants but ultimately determined that defendants conduct did not provide an independent basis for judgment in favor of the claimant. *Id.*; *see also Smith v. Hartford Life & Acc.*, 2013 WL 394185, *26 (N.D. Cal. Jan. 30, 2013); *Moskowite v. Everen Capital Corp.*, 2005 WL 1910941, *4 (N.D. Cal. Aug. 10, 2005). This Court agrees with the reasoning relied upon by the Seventh Circuit and finds that the doctrine of judicial estoppel does not apply here. Although the Plan prevailed in a practical sense before the Social Security Administration, the Plan was not a party in the Social Security action. In addition, Mr. Barnett's position in the Social Security action cannot be attributed to the Plan.

Thus, this Court DENIES Mr. Barnett's request for summary adjudication on his judicial estoppel argument and GRANTS the Plan's countermotion for summary adjudication on this issue.

**4. The Plan's Judicial Estoppel Argument**

In the Plan's countermotion it contends that Mr. Barnett should be judicially estopped from claiming that he is disabled because he testified to the contrary at his deposition in another matter. The deposition testimony the Plan relies upon are Mr. Barnett's responses to questions regarding physical activities he engaged in. Mr. Barnett was asked whether he rides horses, river rafts, and camps. Mr. Barnett responded in the affirmative.[7]

---

[7] Mr. Barnett objects to this testimony as irrelevant and inadmissible. (Doc. 29, p. 7; Doc. 30, p. 10). Relying on *Abatie*, 458 F.3d at 955, he contends that the testimony is inadmissible because when review of an ERISA benefits claim is for abuse of discretion, evidence outside the administrative record is inadmissible on the merits of the claim. *Id.* at 970-71. The Plan relies on this testimony in support of its judicial estoppel argument. It does not rely on it in relation to the merits

Mr. Barnett's responses do not satisfy the first prong of the judicial estoppel analysis. As discussed above, in deciding whether to apply the doctrine of judicial estoppel courts first consider whether a party's later position is clearly inconsistent with its earlier position. *New Hampshire*, 532 U.S. at 750. Here, it is unclear as to whether Mr. Barnett has taken inconsistent positions. Mr. Barnett's current position is that he is totally disabled under the terms of the Plan, *i.e.*, he maintains that he is "unable to perform any reasonable job for the *company* due to illness or injury . . ." (Doc. 18-20, p. 4). Mr. Barnett's alleged participation in the above activities does not necessarily show that he is "unable to perform any reasonable job for the *company*." (Doc. 18-20, p. 4). In other words, the Plan has failed to show that Mr. Barnett's participation in the above activities shows that he is capable of performing a "reasonable job for the *company*." (*Id*.).

Accordingly, this Court DENIES the Plan's request for summary adjudication on its judicial estoppel argument.

**C. Mr. Barnett's Third Cause of Action**

In Mr. Barnett's third cause of action, he seeks to enjoin the Plan from utilizing unfair claims processes and appeals procedures. He alleges that the Plan and Sedgwick denied him a full and fair review of his claim. He also alleges that the Plan, in conjunction with Sedgwick, instituted and put into effect claims and appeals processes that violate ERISA. In the Plan's countermotion, it contends that it is entitled to summary adjudication on this cause of action because: (1) Edison did not have to offer Mr. Barnett a job in order to terminate his benefits and (2) Mr. Barnett's application and receipt of Social Security benefits does not judicially estop the Plan from denying benefits.

In a motion for summary judgment "[o]n an issue as to which the nonmoving party will have the burden of proof . . . the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984. Here, the Plan's arguments do not show that there is an absence of evidence to support Mr. Barnett's claims that he was denied a full and fair review of his claim or that the Plan's claims and appeals processes violate ERISA.

Hence, the Plan's countermotion for summary adjudication on Mr. Barnett's third cause of

---

of Mr. Barnett's claim. Accordingly, Mr. Barnett's objection is OVERRULED.

action is DENIED.

## V. CONCLUSION AND ORDER

For the reasons discussed above, this Court:

1. GRANTS Mr. Barnett's motion for summary adjudication on his first cause of action. The Plan is enjoined from relying on the 180 day contractual limitations period. The Plan's countermotion for summary adjudication on this cause of action is DENIED.

2. DENIES Mr. Barnett's motion for summary adjudication on the issue of whether Edison is required, under the plain language of the Plan, to offer him an existing job in order to validly terminate his disability benefits. The Plan's countermotion for summary adjudication on this issue is GRANTED. Under the plain language of the Plan, Edison is not required to offer a beneficiary an existing job before terminating his or her benefits.

3. DENIES Mr. Barnet's motion for summary adjudication on the issue of whether the Plan should be judicially estopped from arguing that he is not totally disabled based on his application and receipt of Social Security benefits. The Plan's countermotion for summary adjudication on this issue is GRANTED. Judicial estoppel does not apply.

4. DENIES the Plan's countermotion for summary adjudication on the issue of whether Mr. Barnett should be judicially estopped from claiming that he is totally disabled.

5. DENIES the Plan's countermotion for summary adjudication on Mr. Barnett's third cause of action.

IT IS SO ORDERED.

Dated: **May 20, 2013**     /s/ Lawrence J. O'Neill
UNITED STATES DISTRICT JUDGE