UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM BARNETT,<br><br>           Plaintiff,<br><br>    v.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY LONG TERM DISABILITY PLAN,<br><br>           Defendant. | 1:12-CV-00130-LJO-SAB<br><br>**DECISION OF THE COURT; FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

**INTRODUCTION**

Plaintiff William Barnett ("Barnett") brings this action under the Employee Retirement Income Security Act ("ERISA") against Defendant Southern California Edison Company Long Term Disability Plan ("the Plan"). Before the Court is Barnett's claim for reinstatement of his long term disability ("LTD") benefits. The parties have agreed to forgo trial.

Having considered the parties' submissions and the administrative record, the Court concludes that the Plan did not abuse its discretion in terminating Barnett's LTD benefits. Therefore, Barnett's LTD benefits should not be reinstated.

**BACKGROUND**

**A.  Facts**

    **a.  The Plan**

Barnett was employed by Southern California Edison ("Edison") as a Program Manager/Project Manager. (Doc. 23-6, p. 4 ¶ 3). As an Edison employee, he was eligible to participate in Southern California Edison's Long Term Disability Plan. (*Id*.). The Plan is administered by Edison's Benefits

1

Committee ("Benefits Committee"). (Doc. 30, p. 2 ¶ 5). The claims are administered by Sedgwick Claims Management Services, Inc. ("Sedgwick"). (Doc. 23-6, p. 4 ¶ 2). The day to day contract administration is managed by Deborah Jacobs, Edison's Human Resources Manager. (Doc. 30, p. 4 ¶ 15).

Under the Plan an individual is "disabled" if he or she is unable to perform his or her regular and customary job for the first two years of his or her disability and any reasonable job for the company after two years. (Doc. 23-6, p. 2 ¶ 1A). "A reasonable job is any gainful activity in any job classification for which [the individual is] or may reasonably become fitted by education, training, or experience." (*Id*. at ¶ 1B).

The Plan further provides that if a benefit claim is denied in whole or in part, the Plan participant may appeal the decision. (Doc. 23-6, p. 3 ¶ 1F). Appeals are processed as follows: (1) Sedgwick determines the participants continued eligibility for benefits based on the medical documentation available. (Doc. 23-6, p. 3 ¶ 1F). (2) If the plan participant disagrees with Sedgwick's decision, the claim is reviewed by three physicians. (*Id*.). If two of the three physicians agree that the Plan participant is disabled, then long term disability benefits are approved. (*Id*.).

### b.   **Barnett's Benefits Request**

Barnett had lower back problems which led to surgery in 1999. (Doc. 30, p. 2 ¶ 1). In June 2000, he left work and applied for disability benefits with the Plan. (Doc. 30, p. 2 ¶ 2). The Plan certified Barnett as disabled and approved his request for benefits effective December 20, 2000. (Doc. 23-6, p. 4 ¶ 4; Doc. 30, p. 2 ¶ 3). The Plan further informed Barnett that he needed to apply for Social Security disability benefits and that any benefits he received from the Social Security Administration would be deducted from the benefits paid by the Plan. (Doc. 23-6, p. 4 ¶ 4).

The Social Security Administration found Barnett disabled and awarded him benefits effective August 2000. (Doc. 23-6, p. 15 ¶ 34). As a result of this award, the Plan reduced the benefits it paid to Barnett by the amount he received from Social Security. (Doc. 23-6, p. 15 ¶ 35). On June 19, 2009, the Social Security Administration found that Barnett suffered from a continuing disability. (Doc. 23-6, p. 16 ¶ 38).

### c. Termination of Barnett's Benefits

In July 2009, the Plan exercised its right to certify that Barnett continued to be eligible for benefits by having an independent medical examination performed by an orthopedic surgeon. (Doc. 30, p. 5 ¶ 17). The surgeon determined that Barnett's back surgery was successful with limited residual effect, made various findings regarding Barnett's physical abilities, and deferred the question of whether Barnett could perform work in accordance with the Plan to a vocational rehabilitation expert. (Doc. 30, p. 6, ¶ 19-25). In a transferable skills analysis, a vocational rehabilitation expert concluded that Barnett could perform four positions with Edison. (Doc. 30, p. 7 ¶ 27).

On August 26, 2009, the Plan terminated Barnett's benefits based on its determination that he no longer satisfied the Plan's definition of disability. (Doc. 30, p. 7 ¶ 28). The Plan determined that, based on the surgeon's independent medical examination and the transferable skills analysis, Barnett was no longer precluded from performing any reasonable job at Edison. (*Id*.). The Plan informed Barnett of his right to appeal its decision. (Doc. 23-6, p. 5 ¶ 5).

### d. Barnett's Appeal

On September 25, 2009 and October 13, 2009, Barnett, through counsel, requested reconsideration of the termination of his benefits. (Doc. 23-6, p. 5 ¶ 6). On April 7, 2010, the Plan, through Sedgwick, denied Barnett's appeal. (Doc. 23-6, p. 5 ¶ 7). As part of the appeal process, six doctors[1] reviewed Barnett's case and an updated list of restrictions was created. (Doc. 18-20, p. 3). Based on the updated restrictions, another transferable skills analysis was performed and it was determined that Barnett was capable of performing two positions at Edison. (Doc. 18-20, p. 3-4). Accordingly, Sedgwick concluded that because Barnett was no longer precluded from performing any "reasonable job" with Edison, he no longer satisfied the Plan's definition of disability and upheld the termination of his benefits. (Doc. 18-20, p. 5).

### B. Procedural History

On January 27, 2012, Barnett filed a complaint with this Court alleging three causes of action under ERISA. (Doc. 1). On May 20, 2013, this Court granted in part Barnett's motion for

---

[1] If multiple disciplines are implicated in a disability, as in Barnett's case, multiple panels of physicians can be used during the appeals process. (Doc. 24-2, p. 7:5-12).

3

summary judgment and enjoined the Plan from relying on its 180 day contractual limitations period. (Doc. 34). The Court also granted in part the Plan's countermotions for summary judgment in holding that Edison is not required to offer a beneficiary an existing job before terminating his or her benefits, and that the Plan is not judicially estopped from arguing that Barnett is not totally disabled on the basis of his receipt of Social Security benefits. (*Id.*).

On July 8, 2013, this Court issued a pretrial conference order excluding from trial Barnett's first cause of action because it was determined on summary judgment. (Doc. 38). The Court also dismissed Barnett's third cause of action because an adequate remedy exists under 29 U.S.C. § 1132(a)(1). (*Id.*).

Following a pretrial conference, this Court issued a pretrial order on July 11, 2013. (Doc. 40). The Court vacated the August 20, 2013 trial date because the parties agreed to forgo trial. (*Id.*). The Court determined that the only remaining issue is whether, based solely on review of the administrative record, the Plan abused its discretion by termination Barnett's LTD benefits.

On July 16, 2013, the parties participated in a settlement conference before Magistrate Judge Jennifer L. Thurston but did not settle the case.

On July 29, 2013, Barnett filed his opening trial brief. On July 31, 2013, the Plan filed its opening trial brief and lodged the administrative record with the Court. The parties filed reply briefs on August 16, 2013.

Having considered the parties' submissions and the Administrative Record, the Court issues this order.

## ANALYSIS

### A. Abuse of Discretion

In the Ninth Circuit, "[i]n the absence of a conflict, judicial review of a plan administrator's benefits determination involves a straightforward application of the abuse of discretion standard." *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623, 629 (9th Cir. 2009) (citing *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178–79 (9th Cir. 2005)). The Supreme Court has held that, where "the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own

pocket ... this dual role creates a conflict of interest[.]" *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  Here, Barnett points to no evidence in the administrative record that shows such conflict of interest in the Plan. Therefore, "the plan administrator's decision can be upheld if it is grounded on *any* reasonable basis." *Montour*, 588 F.3d at 629 (internal citation omitted; emphasis in the original).  "In other words … the existence of a 'single persuasive medical opinion' supporting the administrator's decision can be sufficient to affirm, so long as the administrator does not construe the language of the plan unreasonably or render its decision without explanation." *Id*. (citing *Boyd*, 410 F.3d at 1179.).  "An administrator's decision is an abuse of discretion only when it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Thompson v. Ins. & Benefits Trust/Comm. Peace Officers Research Ass'n of California*, 670 F. Supp. 2d 1052, 1066 (E.D. Cal. 2009) (citing *Montour*, 588 F.3d at 629–30).  "So long as the administrator's decision has a rational basis, the court is not free to substitute its own judgment for that of the administrator in determining the eligibility for plan benefits even if the court disagrees with that decision." *Id*.

**B.     The Plan's Termination of Barnett's Benefits**

Here, a review of the administrative record reveals that the Plan did not abuse it discretion in terminating Barnett's LTD benefits.  Rather, the evidence shows that the Plan reasonably concluded that Barnett no longer fell under the Plan's definition of "disabled."

The Plan terminated Barnett's LTD benefits in 2009 after a surgeon assessed Barnett, and a vocational rehabilitation expert, relying on the surgeon's findings, determined that Barnett was capable of performing four positions with Edison – one position, Customer Specialist 1, with no accommodations, and three other positions with accommodations.  When Barnett appealed the termination of his benefits, the Plan had six other doctors, three orthopedic surgeons and three neurological specialists, assess Barnett's condition and medical history.  Including the original evaluating surgeon, each of the seven doctors that assessed Barnett except for one concluded that Barnett was capable of work.  During Barnett's appeal, another transferrable skills analysis was performed by the vocational rehabilitation expert and found that, with Barnett's updated restrictions, Barnett was capable of performing two positions with Edison – Customer Specialist 1 with no

1   accommodations, and Telephone Operator, with the accommodation of no lifting over five pounds.[2]

2   Barnett argues that the Plan abused its discretion by: 1) improperly considering
3   accommodations; 2) failing to consider Barnett's Social Security disability award; and 3) failing to
4   consider Barnett's medications.

5   Barnett's argument as to accommodations is unavailing. Under the Plan's definition, Barnett
6   is not disabled if he can perform any reasonable job for Edison after the first two years of disability.
7   The administrative record shows that Barnett was found capable of performing at least one job for
8   Edison with no accommodations. The occupation of Customer Specialist 1 fits all of the Barnett's
9   restrictions. For example, it is performed within a call center work environment that includes an
10  adjustable work station to fit a sit/stand option and does not require lifting more than five pounds.
11  Therefore, even if the Plan does not permit consideration of accommodations, as Barnett argues, the
12  record shows that he still does not fall under the Plan's definition of "disabled."

13  Barnett's claim that the Plan abused its discretion by failing to consider this Social Security
14  disability award likewise fails. The Plan points to evidence in the administrative record that each of
15  the six doctors who evaluated Barnett's condition during his appeal considered Barnett's Social
16  Security award. Barnett argues that the Plan abused its discretion by not expressly discussing its
17  consideration of Barnett's Social Security award in its denial letters. However, Barnett provides no
18  authorities to show that this alone constitutes an abuse of discretion by a plan administrator.
19  Moreover, "[w]hether the administrator considered a contrary SSA disability determination" is only
20  "one among potentially many relevant factors," to be considered, including "the quality and quantity of
21  the medical evidence, whether the plan administrator subjected the claimant to an in-person medical
22  evaluation or relied instead on a paper review of the claimant's existing medical records, [and] whether
23  the administrator provided its independent experts with all of the relevant evidence[.]" *Montour*, 588
24  F.3d at 630 (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008)) (internal quotation
25  omitted). Here, the Plan relied on the opinions of doctors formed by reviewing, *inter alia*, Barnett's
26  Social Security award in denying Barnett's appeal. Further, the Plan provides evidence from the

---

[2] Barnett argues that the new restrictions should be interpreted as adding to rather than replacing the old restrictions. However, this does not alter the analysis because Barnett was found capable of performing at least one position without accommodation under the new and old restrictions.

administrative record that it had a surgeon evaluate Barnett in person before terminating his LTD benefits and that the panels of doctors assessing Barnett during his appeal reviewed extensive medical records and evidence.  Therefore, the Plan's "review of plaintiff's claim demonstrates that any minor procedural irregularities, to the extent they occurred, did not bias [the Plan] against plaintiff or otherwise prejudice him." *Thompson*, 670 F. Supp. 2d at 1067.

Finally, Barnett's argument as to his medications is similarly unpersuasive.  Barnett takes Vicodin zero to two times a day and Neurontin "as needed."  Barnett claims that these medications prevent him from performing the occupations at Edison for which he was found capable because the medications compromise his concentration and mental acuity.  He argues that the Plan abused its discretion by failing to consider these medications.  However, the Plan provided evidence from the administrative record that the surgeon who personally examined Barnett prior to the termination of his benefits as well as at least four of the six panel doctors who assessed Barnett during his appeal all expressly noted or considered his medications.  For example, a neurological specialist on the appeal panels stated in his findings that "at no point did [Barnett] appear to complain to his physician of any problems with medication side effects that would have resulted in this complaint."  Barnett further provides no supporting evidence, including from any medical professional, that his medication regimen impairs his ability to perform a sedentary occupation.  Thus, the record does not support Barnett's argument that the Plan abused its discretion by failing to consider his medication.  *Cf., Smith v. Cont'l Cas. Co.*, 450 F.3d 253, 264-65 (6th Cir. 2006) (finding that the administrator's failure to consider claimant's "many medications, including Synthroid, Prozac, Neurontin, Oxycontin, Lortab, Fioricet, Zanaflex, Trazadone, Vivelle, Vioxx, Toradol, and Pycnogenol" and claimant's treating physician's letter opining that "it would be very difficult to function under any circumstances while under the influence of these medications" weighed in favor of the denial of benefits being arbitrary and capricious under ERISA); *Adams v. Prudential Ins. Co. of Am.*, 280 F. Supp. 2d 731, 740-41 (N.D. Ohio 2003) (holding that the administrator abused his discretion by failing to consider claimant's heavy narcotics regimen, including daily use of Oxycontin and Demerol, and treating physician's letter stating that claimant is unable to perform any work while on those medications in denial of benefits to claimant.).

Therefore, based on the administrative record, the Plan did not abuse its discretion in terminating Barnett's LTD benefits. Accordingly, the Court declines to order the reinstatement of Barnett's LTD benefits.

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court ORDERS the Clerk of Court to enter judgment in favor of Defendant Southern California Edison Company Long Term Disability Plan and against Plaintiff William Barnett and to close the case.

IT IS SO ORDERED.

Dated: **August 26, 2013**      /s/ Lawrence J. O'Neill
                                UNITED STATES DISTRICT JUDGE